UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BARBARA HOEY,

        Plaintiff,

   v.

NEW YORK LIFE INSURANCE CO.
INC., a New York Corporation
and NEW YORK LIFE INSURANCE &
ANNUITY CORPORATION, a Delaware
Corporation,

        Defendants.
_____/

NO. CIV. S-09-02116-LKK-GGH

<u>O R D E R</u>

    Plaintiff Barbara Hoey ("plaintiff" or "Hoey") brings claims of discrimination, retaliation, and hostile work environment against her former employer. The employer now moves for summary judgment on the grounds that there is no evidence from which a reasonable jury can find it liable. For the foregoing reasons, defendant's motion is granted in part and denied in part.

///

///

# I. BACKGROUND

Plaintiff Barbara Hoey ("Hoey" or "plaintiff") sues her former employer, defendant New York Life Insurance Company, Inc. ("NYL" of "defendant"), for age discrimination and disability discrimination under California law. Hoey worked for NYL for approximately forty years. Decl. of Barbara Hoey ¶ 1, Ex. 4 to Pl. Opp. Mot. Summ. Judg. ("Hoey Decl."). Plaintiff claims that she was constructively discharged on July 17, 2008, when she retired at the age of 58 years. Id. at ¶ 17.

## A.   Hoey's Early Employment with NYL

Hoey began her employment with NYL when she was approximately 18 years old. Id. at ¶ 1. In 1993, plaintiff transferred from NYL's Sacramento office to its Roseville office. Id. at ¶ 2. Hoey served as the assistant office manager in Roseville. Id. Her supervisor was assistant manager Richard Olson ("Olson") until his retirement in April 2006. Id.

Neither party has presented much evidence of plaintiff's work history through 2004. The only evidence[1] submitted by plaintiff is

---

[1] Plaintiff has submitted numerous documents in opposition to defendant's motion. Some of these documents were produced in discovery. The court cannot tell which of the documents were produced in discovery and thus admissions of a party that they are responsive documents and which were from some other source and this not authenticated. Of course the court can only consider admissible evidence. Because of the confusion of source the court does not give any weight to plaintiff's exhibits numbered 5-6, 9-15, 17-22. Plaintiff did authenticate two documents in her declaration, which the court considers: plaintiff's exhibits numbered 7 (2004 annual review), 16 (April 18, 2008 letter to NYL). Plaintiff attempted to also authenticate her 2005 annual review, which appears to be included as the exhibit numbered 8. However, her declaration states that, "Attached to plaintiff's index of exhibits, nos. 5-7, are

2

her 2004 performance evaluation.[2] In Hoey's 2004 evaluation, Olson indicated that Hoey "[d]emonstrated strength in many skills and behaviors and made strong contributions to the General Office. Overall [Hoey] has performed responsibilities at a high level of competence." Pl. Ex. 7. Out of five categories for evaluation, Hoey was evaluated in the second most favorable category. In the specific evaluations, which are measured on a scale from one through seven, where one indicates outstanding strength, four indicates meets expectations, and seven indicates significant development opportunity, plaintiff received six ones, nine twos, thirteen threes, and three fours. Id. She did not receive any fives, sixes, or sevens. Of note are the ones she received for performing all job functions unsupervised, delivering excellent service, commitment to quality, accountability, and knowledge of the job and the fours she received for personal and professional growth and innovation. Id. Innovation is described as, "Sees change as an opportunity. Seeks and champions opportunities to improve workflow. Anticipates problems and initiates new and better ways of doing the job." Id. Further, Olson made the following comments on Hoey's "outstanding strengths and the achievements and/or

---

plaintiff's 2004 and 2005 annual reviews." Hoey Decl. ¶ 3. The exhibits numbered 5 and 6 do not contain any annual reviews. The exhibit numbered 7 only includes plaintiff's 2004 annual review. The court will nonetheless consider the 2005 annual review because its contents are not determinative of any issue before the court

[2] As discussed in the following sections, plaintiff has provided some comparative testimony of Olson's and Rick Skinner's supervisory styles.

1  contributions that were not planned or previously identified:"

2      Barbara's result-oriented problem solving efforts and a
        strong focus in providing excellent customer service
3      continues   to   provide   her   a   great   respect   and
        appreciation by the agents and management staff. She
4      very efficiently does FYC histories for agents and
        corrects TREM problems. Her communication and actions
5      earn customer trust. Barbara assumes an effective team
        player's role in being accountable for the G.O. staff
6      and demonstrates a commitment to achieving established
        objectives. Barbara's supervisory role in the G.O. has
7      contributed significantly to very favorable G.O. reviews
        and   audits.   Barbara   is   extensively   involved   in
8      completing performance evaluations for the staff.

9  Id.

10     In  Hoey's  2005  evaluation,  Olson  indicated  that  Hoey

11 "[d]emonstrated strength in many skills and behaviors and made

12 strong contributions to the General Office. Over all [Hoey] has

13 performed responsibilities at a high level of competence." Pl.

14 Ex. 8. Out of five categories for evaluation, Hoey was evaluated

15 in the second most favorable category. In the specific evaluations,

16 which are measured on the same scale used in 2004, plaintiff

17 received two ones, eleven twos, ten threes, and six fours. Id. She

18 did not receive any fives, sixes, or sevens. Of note are the ones

19 she received for accountability and knowledge of the job, the twos

20 she  received  for  performing  all  job  functions  unsupervised,

21 management/organization of work, and teamwork, and the fours she

22 received  for  personal  and  professional  growth,  composure,

23 innovation, and leadership. Id. The definition of innovation is

24 unchanged from the 2004 evaluation. Id. Further, Olson made the

25 following  comments  on  Hoey's  "outstanding  strengths  and  the

26 achievements  and/or  contributions  that  were  not  planned  or

4

1  previously identified":

> Barbara's result-oriented problem solving efforts and a
> strong focus in providing excellent customer service
> continues to provide her a great respect and
> appreciation by the agents and management staff.
> Barbara's exceptional experience and insight facilitate
> her identifying areas of concern and she has the
> knowledge to solve problems. Barbara assumes an
> effective team player's role in being accountable for
> the GO staff and demonstrates a commitment to achieving
> established objectives. Barbara provides coaching and
> guidance to entire GO staff. Barbara is extensively
> involved in completing performance evaluations for the
> staff.

Id.

**B.   Hoey's Employment with NYL after April 2006**

Following Olson's retirement in April 2006, Rick Skinner ("Skinner") transferred from the Fresno office of NYL to the Roseville office where he replaced Olson as assistant manager and Hoey's supervisor. Skinner Dep. 7:11-20. All of the employees but one who reported to Skinner at the time of Hoey's retirement were over the age of 40, and most were in their 50s or 60s: Pamela Cramer (48), Evelyn Sprague (49), Tina Floyd (51), Jeannie Gregorin (52), Sandy Lehrer (57), Judy Drake (59), Jamie Stevens (60), Linda Dobson (61 or 63), and Hoey (58). Def. Undisputed Fact No. 25. Hoey claims that her problems with NYL began when Skinner transferred to Roseville.

During this time, the Roseville office was increasing in size. Def. Undisputed Fact Nos. 27-28. Specifically, between 2006 and 2008, the number of cases being processed and the number of contracts that were handled doubled. Id. This "tremendous growth" required Skinner to ensure that Hoey had sufficient training in

1  order to manage the office effectively. Id.[3]

2      Starting shortly after his transfer to Roseville, Skinner

3  asked Hoey what her plans were for the next three to five years and

4  began developing a position of office coordinator, who would report

5  to Hoey. Skinner asserted that this was due to the growth in the

6  Roseville office. Skinner Dep. at 101:14-103:4. Skinner also

7  asserted that he believed it would take three to five years to

8  train someone to be able to fill Hoey's position and, as such,

9  wanted to determine Hoey's plans so he could begin such training

10 if necessary. Id. at 113:5-21. At some point, Skinner gave Hoey

11 more responsibilities and took away some of her other

12 responsibilities. Id. at 114:4-15; Hoey Decl. ¶¶ 5, 9. He added the

13 responsibilities of overseeing all IPS operations, individual

14 policy services in the general office, and new business and general

15 office administrative supporting services. Skinner Dep 114:4-15.

16 But, he also began to remove some of Hoey's supervisory

17 responsibilities. Hoey Decl. ¶¶ 5, 9. Specifically, Hoey was no

18 longer "allowed [to] hold supervisory meetings with the clerical

19 staff, or to provide them [her] monthly Performance Review and

20 Planning." Id. at ¶ 5. Hoey was also "excluded from staff and

21 ///

22 _____

23      [3] The tendentious phrasing of the statement was propounded as
   an undisputed fact, and plaintiff did not dispute it. Given
24 plaintiff's long and heretofore apparently satisfactory service it
   is not at all clear to the court that Skinner has some special need
25 to insure Hoey's training was sufficient. Be that as it may, the
   court assumes that Skinner had a general obligation relative to
26 those under his supervision.

1   underwriter meetings." Id. at ¶ 9. Skinner also prepared staff
2   evaluations without any input from Hoey. Id. at ¶ 5.

3       Hoey complained that Skinner would ask her questions "which
4   no one could answer." Id. at ¶ 5. The only example of such a
5   question that plaintiff has provided, however, is that Skinner
6   asked Hoey "how things should happen when new people are trained."
7   Id. at ¶ 12. Plaintiff has not explained why this relatively
8   straightforward, if broad, question is unanswerable nor is it
9   selfevidently unanswerable.[4]

10      Hoey has also declared that she observed Skinner treat older
11  women, including herself, with "extreme[] disrespect[]." Id. at
12  ¶ 4. Additionally, Hoey declared that Skinner told her that, while
13  he was manager of the Fresno office, when he learned that a female
14  employee who was out on medical leave "was not returning to work
15  . . . , he celebrated at work by popping a bottle of champagne."
16  Id. at ¶ 10. Hoey contends that Skinner did so to intimidate her
17  into quitting. Id. Further, while in Fresno, an office assistant
18  under Skinner's supervision complained that he treated her
19  unfairly. Skinner Dep. at 124:14-126:14. The company's Human
20  Resources Department investigated the accusation and, as a result,
21  reprimanded Skinner, denied him a raise, and cut his annual bonus
22  in half. Id.

23      In May 2006, six weeks following his transfer, Skinner
24  provided Hoey with a mid-year evaluation. Skinner Dep. 25:19-22.

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26      [4] Indeed at oral argument plaintiff's counsel admitted that
    the question is answerable.

During their discussion of this evaluation, Hoey expressed her belief that Skinner was trying to force her out. Id. at 26:3-11. Specifically, Hoey declared that Skinner told her, "I don't know how long that you will be here." Hoey Decl. ¶ 5. Skinner has testified that she did not indicate that he was trying to force her out because of her age. Skinner Dep. 25:23-26:11.[5] Hoey also contends that Skinner would make condescending comments about her work performance every time that he was around her. Id. at ¶ 7.

On or about May 23, 2006, Hoey told Skinner that she believed he was treating her unfairly and expressed serious concerns that he was trying to get rid of her or force her out of the company. Hoey Decl. ¶ 6. Also in May 2006, plaintiff complained to Gary Lamons ("Lamons"), NYL's Zone Administrative Vice President and Skinner's supervisor, about Skinner's treatment of her. Hoey Dep. 261:1-19. Hoey was unable to recall whether she told Lamons that she felt that Skinner was discriminating against her on the basis of her age. Id.

On or about November 10, 2006, Skinner and Hoey discussed her upcoming vacation and medical leave. Skinner asserts that Plaintiff had not told him about any medical condition causing her to take the leave. Skinner Dep. at 47:13-48:7. Plaintiff has not asserted otherwise. Skinner also testified, however, that Hoey reported to him her concern that he was trying to force her out of the company during this conversation. Id. at 48:19-49:1.

---

[5] Neither party has presented evidence on the content of the May evaluation.

8

1    On December 20, 2006, Skinner gave Hoey her annual evaluation.
2  Id. 31:1-3. His overall evaluation was that Hoey had "consistently
3  performed the responsibilities of the position, demonstrated the
4  skills and behaviors necessary to contribute to the success of the
5  general office." Id. at 31:7-12. Skinner testified that at this
6  point Hoey was not in jeopardy of losing her job. Id. at 31:15-17.
7  Nonetheless, her evaluation was not as strong as previous years.
8  Hoey was also placed on an action plan in this evaluation. Id. at
9  36:17-25. The only evidence plaintiff has presented on this issue
10  is that all second line managers and assistant office managers are
11  required to have an action plan as part of their job duties. Id.
12  It does not indicate a performance issue. Id. Along with this
13  evaluation, Hoey complained to Skinner about his change in the
14  policy approving vacations from one that was based upon seniority.
15  Id. at 52:5-24.

16    Skinner met with Hoey to discuss her annual evaluation in
17  December 2007. Hoey Decl. ¶ 11. Skinner informed Hoey that she was
18  not meeting the standards of an Assistant Office Manager, but was
19  rather performing the duties of the lower position of Office
20  Coordinator. Id. Hoey interpreted this comment as a demotion. Id.
21  After the meeting, on or about December 19, 2007, Hoey wrote a
22  comment in response to her annual evaluation noting that she had
23  never received such a low evaluation throughout her tenure with
24  NYL. Skinner Dep. 66:5-13.

25    On January 31, 2008, Hoey and Skinner met to discuss Hoey's
26  work performance. Skinner testified that Hoey was upset during the

1  meeting, but denies that he treated her with hostility. <u>Id.</u> at
2  78:1-86:24. Skinner further testified that Hoey reported during the
3  meeting that she felt as though she was having a heart attack. <u>Id.</u>
4  Hoey declared that Skinner sat near the door during the meeting,
5  almost blocking it such that she was unable to leave. Hoey Decl.
6  ¶ 12. She contends that he yelled at her when discussing her work
7  assignments and then asked her the "unanswerable" question of how
8  things should happen when new people are trained. <u>Id.</u> She described
9  his demeanor as irrate and enraged. <u>Id.</u> Ultimately, she felt a
10 tightness in her chest and found it difficult to breathe. <u>Id.</u> Hoey
11 believed that she was having a heart attack. <u>Id.</u> She eventually
12 left the conference room and went to her physician. <u>Id.</u> She was
13 diagnosed with extreme hypertension, and provided documentation to
14 NYL to take medical leave. <u>Id.</u> at ¶ 13.

15 **C.   Hoey's Medical Leave and Retirement**

16      January 31, 2008, was Hoey's last day working at NYL. Skinner
17 Dep. 103:5-9. Hoey then began approved medical leave. <u>See</u>
18 O'Sullivan Dep. 41:14-20. After Hoey's departure, Tina Floyd
19 ("Floyd") assumed the position of Office Coordinator and reported
20 directly to Skinner. Skinner Dep. at 103:15-21. Floyd had worked
21 for NYL for approximately six years. <u>Id.</u> at 103:22-25. Floyd's
22 salary was significantly lower than Hoey's salary. O'Sullivan Dep.
23 96:23-97:4.

24      On February 1, 2008, Hoey lodged a formal complaint of age
25 discrimination against Skinner with NYL's human resources
26 department. Hoey Decl. ¶ 13. Later that day, O'Sullivan spoke to

1  Hoey on the telephone about her claim. Sullivan Dep. 17:3-20. Hoey

2  reported to O'Sullivan that Skinner stated to Hoey that he does not

3  know how long Hoey will be with NYL and that she is not part of his

4  long range plan when he first started working in Roseville. Id. at

5  20:7-11. Hoey also reported her concern about Skinner's change of

6  the office policy for approving vacations from one that was based

7  upon seniority to some other system and her belief that he was

8  doing so to push out older employees. Id. at 29:14-33:1. O'Sullivan

9  also documented Hoey's report that she complained to Skinner's

10 supervisor, Lamons. As it turned out Lamons dismissed her

11 complaints as a personality conflict. Id. at 35:7-14.[6] Hoey further

12 complained that Skinner made her afraid to go to work by telling

13 her about the large number of underwriters he has fired and that

14 he was setting her up for failure. Id. at 38:9-11. Additionally,

15 Hoey reported that she had no blood pressure problems until Skinner

16 transferred to Roseville and described how she felt that she was

17 having a heart attack during the January 31, 2008 meeting. Id.

18 Lastly, Hoey reported to O'Sullivan that she believed that Skinner

19 was grooming Tina Floyd, who was 51 and seven years younger than

20 Hoey, to take her position. Hoey Decl. ¶ 13.

21      As a result of this conversation, O'Sullivan investigated

22 Hoey's claim that Skinner celebrated in Fresno after an employee

23 _____

24      [6] There is no evidence that Lemons was aware of the incident
   in Fresno when Skinner opened champagne upon a female worker not
25 returning from medical leave. Dismissing the complaint as a
   personality conflict might appear glib if he was aware of it. If
26 he was not aware of it, it perhaps suggests a failure in
   management.

1   did not return from medical leave. Specifically, O'Sullivan
2   investigated Hoey's report that Skinner opened a bottle of
3   champagne when another employee did not return from medical leave
4   and confirmed that corrective action was taken against Skinner
5   after the incident. O'Sullivan Dep. at 51:11-24.

6       Sometime in March 2008, Skinner removed Hoey's nameplate from
7   her office after some agents had placed urgent documents on her
8   desk unaware that she was out on medical leave. Skinner Dep. at
9   141:5-21. O'Sullivan informed Skinner that doing so was not
10  prudent, and the plate was returned to its original location. Id.
11  at 142:24-143:8.

12      Also in March 2008, O'Sullivan documented her investigation
13  of Skinner. Id. at 70:15-25. She recorded that Skinner admitted to
14  having a three to five year plan and that he asked Hoey what her
15  commitment was to his management plan. Id. She also wrote that
16  Skinner informed her that his management style is to either set up
17  his employees for success or for failure. Id. at 75:2-11.
18  O'Sullivan explained this style as one where employees "would . .
19  . know what training needs might be so that he can make those
20  employees successful, if they failed at something or realize any
21  additional potential they have to expand their contribution." Id.
22  O'Sullivan also documented Skinner's complaint to her that NYL was
23  paying Hoey the wage for an Assistant Office Manager, but that she
24  was actually only doing the work of an Office Coordinator, which
25  is a lower position with less pay. Id. at 92:2-9

26      Hoey's medical leave was initially scheduled to conclude on

1   April 28, 2011. O'Sullivan Dep. 66:14-21. On April 18, 2008, Hoey

2   sent a letter to NYL's medical leave provider forwarding

3   documentation from her medical doctor requesting that she continue

4   medical leave due to anxiety, depression, and hypertension. Hoey

5   Decl. ¶ 15. Hoey has not presented any evidence that she informed

6   NYL directly of the reasons she wanted to extend her medical leave

7   or that she sought an accommodation from NYL.[7]

8        On April 20, 2008, Hoey sent O'Sullivan an email stating that,

9   "With the help of my doctor and counselor, I have made the decision

10  to retire early. The investigation seems to have gone nowhere. We

11  decided it is not worth compromising my health by going back to

12  that environment. My plan was to work until age 62. Therefore, I

13  feel that this is a forced retirement, I'm requesting I get my

14  retirement at age 62 as opposed to 59, since I have been forced out

15  by age discrimination and harassment." O'Sullivan Dep. 111:14-

16  112:2; see also id at 68:4-9, 15-17, 69:4-23. Hoey declares that

17  ///

18  _____

19       [7] Her declaration merely states that she emailed O'Sullivan
    requesting a transfer and that Human Resources was aware that she
20  was on leave for stress-related medical issues. She does not
    indicate when in April she made the request nor has she attached
21  the email. Further, she has not produced any evidence that she
    informed NYL directly that she was requesting the transfer as an
22  accommodation for a disability. While it seems plain that she told
    the medical leave provider that Skinner was the source of
23  plaintiff's anxiety, there is no evidence as to whether that
    information was transmitted to NYL. At oral argument, plaintiff's
24  counsel was not able to clarify or provide any reference to the
    record indicating that plaintiff made any request for a reasonable
25  accommodation directly to her employer. Nor did he make any
    suggestion that the medical provider was required to deliver that
26  request to the employer.

13

1  she would have transferred to NYL's Stockton or Fresno offices.

2  Hoey Decl. ¶ 16.

3  **II. STANDARD FOR A FED. R. CIV. P. 56 MOTION FOR SUMMARY**
   **JUDGMENT**

4

5      Summary judgment is appropriate when there exists no genuine

6  issue as to any material fact. Such circumstances entitle the

7  moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c);

8  see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

9  Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under

10 summary judgment practice, the moving party

11         always bears the initial responsibility of informing the
           district court of the basis for its motion, and
12         identifying those portions of "the pleadings,
           depositions, answers to interrogatories, and admissions
13         on file, together with the affidavits, if any," which it
           believes demonstrate the absence of a genuine issue of
14         material fact.

15 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.

16 R. Civ. P. 56(c)).

17      If the moving party meets its initial responsibility, the

18 burden then shifts to the opposing party to establish the existence

19 of a genuine issue of material fact. Matsushita Elec. Indus. Co.

20 v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also First

21 Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89

22 (1968); Secor Ltd., 51 F.3d at 853. In doing so, the opposing party

23 may not rely upon the denials of its pleadings, but must tender

24 evidence of specific facts in the form of affidavits and/or other

25 admissible materials in support of its contention that the dispute

26 exists. Fed. R. Civ. P. 56(e); see also First Nat'l Bank, 391 U.S.

1  at 289. In evaluating the evidence, the court draws all reasonable

2  inferences from the facts before it in favor of the opposing party.

3  Matsushita, 475 U.S. at 587-88 (citing United States v. Diebold,

4  Inc., 369 U.S. 654, 655 (1962) (per curiam); County of Tuolumme

5  v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

6  Nevertheless, it is the opposing party's obligation to produce a

7  factual predicate as a basis for such inferences. See Richards v.

8  Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The

9  opposing party "must do more than simply show that there is some

10 metaphysical doubt as to the material facts . . . . Where the

11 record taken as a whole could not lead a rational trier of fact to

12 find for the nonmoving party, there is no 'genuine issue for

13 trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted)

14                          **III. ANALYSIS**

15      Plaintiff brings claims of wrongful constructive discharge in

16 violation of the public policies set forth under the California

17 Fair Employment and Housing Act ("FEHA"), age discrimination in

18 violation of FEHA, disability discrimination in violation of FEHA,

19 and unlawful retaliation claims against NYL. Thus, all her claims

20 arise under California law.

21      The California Supreme Court "has adopted the three-stage

22 burden-shifting test established by the United States Supreme Court

23 for trying claims of discrimination . . . ." Guz v. Bechtel Nat.

24 Inc., 24 Cal. 4th 317, 354 (2000). This test is often referred to

25 as the McDonnell Douglas test. Id., see also McDonnell Douglas

26 Corp. v. Green, 411 U.S. 792 (1973). Under this test, plaintiff

1    bears the "initial burden to establish a prima facie case of

2    discrimination." <u>Guz</u>, 24 Cal. 4th at 354. "If, at trial, the

3    plaintiff establishes a prima facie case, a presumption of

4    discrimination arises." <u>Id.</u> at 355. However "[t]he requisite degree

5    of proof necessary to establish a prima facie case . . . on summary

6    judgment is minimal and does not even need to rise to the level of

7    a preponderance of the evidence." <u>Wallis v. J.R. Simplot Co.</u>,

8    26 F.3d 885, 889 (9th Cir. 1994).

9         The elements of a prima facie case of intentional

10   discrimination because of age is that, "(1) [s]he was a member of

11   a protected class, (2) [s]he was qualified for the position sought

12   or was performing competently in the position [s]he held, (3) [s]he

13   suffered an adverse employment action, such as termination,

14   demotion, or denial of an available job, and (4) some other

15   circumstance suggests discriminatory motive." <u>Id.</u> Likewise, the

16   prima facie case of retaliation under the FEHA requires plaintiff

17   to show that "(1) . . . she engaged in a 'protected activity,'

18   (2) the employer subjected the employee to an adverse employment

19   action, and (3) a causal link existed between the protected

20   activity and the employer's action." <u>Yanowitz v. L'Oreal USA, Inc.</u>,

21   36 Cal. 4th 1028, 1042 (2005). Section 12940(h) of the FEHA

22   identifies opposing practices forbidden under the act as a type of

23   protected conduct. Cal. Gov. Code § 12940(h) (West 2011); <u>see also</u>

24   <u>Yanowitz</u>, 36 Cal. 4th at 1042. Finally, the prima facie case for

25   a hostile work environment claim requires plaintiff to show that,

26   "(1) [s]he was a member a protected class; (2) [s]he was subjected

to unwelcome . . . harassment . . . ; (3) the harassment was based on [age]; (4) the harassment unreasonably interfered with [her] work performance by creating an intimidating, hostile, or offensive work environment; and (5) the [employer] is liable for the harassment." <u>Thompson v. City of Monrovia</u>, 186 Cal. App. 4th 860, 876 (2010) (citations omitted).

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate non-discriminatory reason for its conduct. <u>Guz</u>, 24 Cal. 4th at 355-56 (citations omitted). The presumption of discrimination disappears when employers meet this burden. <u>Id.</u> at 356 (citations omitted).

If an employer meets this burden, "The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." <u>Id.</u> (citations omitted). Although the burden of proof remains on plaintiff throughout the burden-shifting analysis, "as a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry - one that is most appropriately conducted by a factfinder, upon a full record." <u>Chuang v. University of Cal. Davis</u>, 225 F.3d 1115, 1124 (9th Cir. 2000). Put differently, given the subtle ways discrimination may manifest itself, any evidence of the required factors leaves resolution of the issue for the trier of fact.

1   Defendant moves for summary judgment on the grounds that there

2   is no evidence that plaintiff suffered an adverse employment action

3   or a hostile work environment. Alternatively, defendant argues that

4   there is no evidence that plaintiff suffered such an action or

5   environment because of her age. Lastly, defendant contends that

6   plaintiff cannot show pretext for any adverse employment actions.[8]

7   **A.   Whether Plaintiff Has Presented Evidence that She
         Suffered an Adverse Employment Action or Hostile Work
8        Environment**

9   Plaintiff contends that she suffered two adverse employment

10  actions because of her age and complaints of age discrimination:

11  that she was constructively discharged and effectively demoted. She

12  also argues that Skinner subjected her to a hostile work

13  environment because of her age.

14  The court first addresses whether plaintiff has presented

15  evidence as to whether she suffered adverse employment actions or

16  a hostile work environment, keeping in mind the minimum standard

17  she must meet, and then the court turns to whether she has

18  presented a triable question as to whether plaintiff has presented

19  evidence that defendant acted with a discriminatory intent.

20  **1.   Constructive Discharge**

21  A constructive discharge "occurs when the employer's conduct

22  effectively forces an employee to resign. Although the employee may

23

24  ─────────────────

[8] At summary judgment, the evidence to show discriminatory
25  motive in the prima facie case is ordinarily sufficient to show
    pretext given the factually intensive inquiry under <u>McDonnell
    Douglas</u>. Thus, for the purposes of this motion, the court often
26  combines both inquiries.

1    say, 'I quit' [or 'I retire'], the employment relationship is

2    actually severed involuntarily by the employer's acts, against the

3    employee's will." <u>Colores v. Board of Trustees</u>, 105 Cal. App. 4th

4    1293, 1305 (2003) (quoting <u>Turner v. Anheuser-Busch, Inc.</u> 7 Cal.

5    4th 1238, 1244-45 (1994)). At trial "[i]n order to establish a

6    constructive discharge, an employee must plead and prove, by the

7    usual preponderance of the evidence standard, that the employer

8    either intentionally created or knowingly permitted working

9    conditions that were so intolerable or aggravated at the time of

10   the employee's resignation that a reasonable employer would realize

11   that a reasonable person in the employee's position would be

12   compelled to resign. [¶] For purposes of this standard, the

13   requisite knowledge or intent must exist on the part of either the

14   employer or those persons who effectively represent the employer,

15   i.e., its officers, directors, managing agents, or supervisory

16   employees." <u>Turner</u>, 7 Cal. 4th at 1251.

17       Here, plaintiff has presented evidence that Skinner yelled at

18   her and was physically threatening towards her during a meeting.

19   The seriousness of that conduct may be inferred by the fact that

20   she took medical leave immediately following that meeting. She

21   eventually, accepted an early retirement rather than return to work

22   under Skinner.[9] A reasonable jury could determine that plaintiff

23   _____

24       [9] The court notes that the present evidence suggests that
     plaintiff "retired" early before Human Resources completed its
     investigation, and without knowing if her request for extended

25   medical leave or a transfer was approved. Whether this evidence
     demonstrates a lack of constructive discharge, or a reasonable

26   determination that her request would not be honored, or some other

1  was constructively discharged from this evidence and, thus,

2  defendant's motion for summary judgment on this ground is denied.

### 2.  Effective Demotion

An adverse employment action "requires a substantial adverse change in the terms and conditions of plaintiff's employment." Holmes v. Petrovich Development Co., 191 Cal. App. 4th 1047, 1962 (2011) (internal quotations and citation omitted). Plaintiff has presented evidence that shortly after Skinner transferred to Roseville, he altered her work responsibilities.[10] As discussed above, he added the responsibility of overseeing certain operations and services, but also removed Hoey's supervisory authority over clerical employees in the Roseville office. The court finds that a reasonable jury could conclude that the removal of supervisory authority constitutes an adverse employment action.

### 3.  Hostile Work Environment

"To prevail on a hostile work environment claim, the plaintiff must show that the harassing conduct was severe enough or sufficiently pervasive to alter the conditions of employment and

_____

conclusion, is for the trier of fact.

[10] Plaintiff may also be arguing that Skinner's decision to adjust the Roseville office's vacation policy from a seniority based system to one where all employees, not just those who have worked for NYL the longest, may take time off over the Christmas holidays, constitutes an adverse employment action. It appears from plaintiff's brief, however, that this decision is merely relevant as alleged evidence of age-based animus. For this reason and for the purposes of this motion only, the court treats the evidence of the change to the vacation policy as evidence of age-based animus and does not consider whether adjustments to the vacation policy could constitute an adverse employment action.

1   create a work environment that qualifies as hostile or abusive to

2   employees because of" her age. <u>Ramirez v. Wong</u>, 188 Cal. App. 4th

3   1480, 1487 (2010) (internal quotations and citation omitted). For

4   the reasons discussed above concerning plaintiff's constructive

5   discharge claim, plaintiff has presented evidence of a triable

6   question as to whether she suffered a hostile work environment.

7   **B.   Whether Plaintiff Has Presented Evidence that She**
    **Suffered these Adverse Employment Actions and Hostile**
8   **Work Environment Because of Her Age**

9   **1.   Constructive Discharge and Hostile Work Environment**

10  Defendant argues that even if there is evidence from which a

11  reasonable jury could conclude that plaintiff suffered a

12  constructive discharge or hostile work environment, NYL is still

13  entitled to summary judgment on these claims because there is no

14  evidence that this conduct occurred because of plaintiff's age.

15  Plaintiff, however, has presented some evidence from which a

16  reasonable jury could infer that Skinner's conduct at the January

17  2008 meeting, which supports both her constructive discharge and

18  hostile work environment claims, was motivated by age-based animus.

19  Specifically, plaintiff has presented evidence that (1) Skinner

20  questioned plaintiff as to how long plaintiff intended to work for

21  NYL suggesting she might not be prepared for the long run;

22  (2) Skinner altered the vacation approval policy in such a way that

23  disproportionately affected older workers; and (3) Skinner promoted

24  a younger woman with significantly less experience than plaintiff

25  to a lower paid position that assumed all of plaintiff's duties

26  while Hoey was on medical leave. Thus, defendant's motion to

21

1  dismiss is denied as to plaintiff's age discrimination claims

2  premised on constructive discharge and hostile work environment.

3         **2.   Effective Demotion**

4        Defendant moves for summary judgment on this claim on the

5  grounds that there is no evidence that demonstrates pretext. At

6  summary judgment, the evidence plaintiff needed to provide under

7  the prima facie case for discriminatory motive and the evidence for

8  pretext are identical because the necessary showing is quite

9  minimal. For this reason, it does not matter on summary judgment

10 whether defendant has produced a legitimate business interest in

11 removing Hoey's supervisory responsibilities. Rather, the relevant

12 inquiry is whether plaintiff has presented any evidence of a

13 discriminatory motive. For the reasons discussed in the previous

14 section, including Skinner's comments to Hoey and her replacement

15 by a younger employee, the court finds that plaintiff has presented

16 a triable question on this claim, and summary judgment on it is,

17 thus, denied.

18       **C.   Whether Plaintiff Has Presented Evidence that She**
             **Suffered these Adverse Employment Actions Because She**
19           **Complained About Age Discrimination**

20       Plaintiff presented evidence that she complained to Skinner

21 and his supervisor, Lamons, about Skinner's treatment of her in May

22 2006. This was before the meeting where Skinner allegedly yelled

23 at her and was physically aggressive towards her, but after Skinner

24 had taken from her significant supervisory authority. Plaintiff,

25 however, testified that she could not recall whether she complained

26 ///

1   about  age  discrimination.[11]  As  a  result,  plaintiff  has  not

2   presented evidence of a triable question as to whether she was

3   retaliated for complaining about age discrimination because she

4   failed  to  present  evidence  that  she  complained  about  age

5   discrimination before she suffered an adverse employment action.

6   Thus,  defendant's  motion  for  summary  judgment  is  granted  on

7   plaintiff's retaliation claim.

8       **D.   Whether Plaintiff Sought a Reasonable Accommodation**

9       Plaintiff  also  brings  a  claim  of  failure  to  engage  in  the

10  interactive process. An employer violates FEHA if it "fail[s] to

11  engage in a good faith interactive process with the employee to

12  determine an effective reasonable accommodation *if an employee with*

13  *a  known  .  .  .  disability  requests  one*." <u>A.M. v. Albersons, LLC</u>,

14  178 Cal. App. 4th 455, 463 (2009) (citing FEHA, Cal. Gov. Code

15  § 12940). Here, plaintiff has presented evidence that in April

16  2008, she requested a transfer from NYL. She has not presented

17  evidence as to whether she informed NYL that she was seeking a

18  transfer as an accommodation for her disability. Rather, she has

19  only presented evidence that on April 18, 2008, she informed a

20  third party medical leave provider that her medical condition

21  prevented her from returning to work under Skinner. Two days after

22  contacting the third party, on April 20, 2008, plaintiff emailed

23  O'Sullivan that she was retiring. There is no evidence as to the

24  ────────────────

25      [11]   It  is  uncontested  that  plaintiff  complained  about  age
    discrimination while on medical leave. Plaintiff has not, however,
26  identified  any  retaliatory  conduct  that  occurred  following  that
    date.

1  relationship between the medical provider and the employer. In its
2  absence the court must give all reasonable inferences to the
3  plaintiff. Accordingly, it assumes that the third party provider
4  notified NYL about plaintiff's expressed inability to work under
5  Skinner for health reasons. Nonetheless, she resigned two days
6  later, which is hardly enough time to determine that further delay
7  was futile. Thus, defendant's motion for summary judgment on
8  plaintiff's failure to engage in the interactive process claim is
9  granted.

10     **D.    Failure to Prevent**

11     A failure to prevent discrimination and harassment claim must
12  be supported by a specific factual finding that discrimination or
13  harassment actually occurred at plaintiff's workplace. <u>Trujullo v.</u>
14  <u>North County Transit Dist.</u>, 63 Cal. App. 4th 280, 288-89 (1998).
15  Defendant's only argument for judgment on this claim is that
16  plaintiff's other claims fail. Thus, the court grants summary
17  judgment for defendant on plaintiff's claims that NYL failed to
18  prevent retaliation and to prevent disability discrimination. The
19  court denies defendant's motion as to plaintiff's claim for failure
20  to prevent age discrimination.

21                    **IV. CONCLUSION**

22     For the foregoing reasons, the court orders as follows:

23     (1)  Defendant's motion for summary judgment (Doc. No. 14) is
24          GRANTED IN PART and DENIED IN PART.

25     (2)  The court DENIES defendant's motion as to plaintiff's
26          age discrimination claims premised on theories of

constructive discharge, effective demotion, and hostile work environment and her claim that defendant failed to prevent this discrimination and harassment.

(3)   The court GRANTS defendant's motion as to plaintiff's retaliation and disability discrimination claims and her claim that defendant failed to prevent retaliation and disability discrimination.

IT IS SO ORDERED.

DATED: July 8, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT